## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PRINCIPAL LIFE INSURANCE   :
COMPANY,   :      **Civil Action No. 1:08-CV-2294**
   :
     **Plaintiffs**   :      **(Judge Conner)**
   :
**v.**   :      **(Magistrate Judge Carlson)**
   :
MARK DeROSE and   :
MATTHEW DeRose,   :
as Trustees of the JoAnn DeRose   :
Family Trust,   :
   :
     **Defendants**   :

## REPORT AND RECOMMENDATION

## I.  BACKGROUND

Presently before the Court in this declaratory judgment action brought to determine the parties' rights and obligations under one or more life insurance policies is a motion to dismiss counterclaims. The counterclaims in question allege, among other things, bad faith and breach of contract under Pennsylvania law, and call upon us primarily to answer the following question: can the mere act of turning to the courts to resolve a legal dispute regarding an insurance contract upon which there has been no claim made fairly be characterized either as bad faith conduct, breach of contract, or breach of the covenant of good faith and fair dealing? Because we believe that the orderly resolution of such contractual disputes by the courts is

something to be encouraged, and not condemned, and because neither federal nor Pennsylvania law supports Defendants' asserted counterclaims, we recommend that the Court find that resort to the courts is not an act of bad faith, and accordingly grant the motion to dismiss.

## II. STATEMENT OF THE CASE

This is an action brought by Principal Life Insurance Company ("Principal" or "Plaintiff") seeking entry of a judgment declaring that, <u>inter alia</u>, Principal's obligations under one or more polices of insurance issued on the life of JoAnn DeRose were not procured for legitimate purposes. In particular, Principal alleges that one or more of the policies were part of a so-called stranger originated life insurance ("STOLI") scheme, and that the non-recourse premium financing used to pay for the premiums on the policies was concealed from Principal during the application process. For this reason, Principal commenced the instant action seeking a declaration that the DeRose policies are void due to a lack of insurable interest at inception, or on the basis of certain material misrepresentations made during the application process. (Compl. at ¶¶ 32-38.)

In response to the complaint, Mark and Matthew DeRose, the trustees of the JoAnn DeRose Family Trust (the "Trustees") filed an answer with affirmative defenses and counterclaims. (Doc. 17.) Specifically, the Trustees have asserted

counterclaims for declaratory relief (Count I), bad faith under 42 Pa. Con. Stat. Ann. § 8371 (Count II), breach of contract (Count III), and breach of the duty of good faith and fair dealing (Count IV).[1]

Principal has moved to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and is ripe for disposition. For the reasons that follow, it is recommended that the motion to dismiss be granted in its entirety.

## III. STANDARD OF REVIEW

Pleading standards under the Federal Rules of Civil Procedure have been undergoing a period of reinterpretation and evolution in the past two years. With respect to the threshold standard for legal sufficiency of a complaint or counterclaim, the United States Court of Appeals for the Third Circuit has recently addressed the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544(2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more

---

[1] Count IV was mistakenly identified in the counterclaim as a second Count III. (Doc. 17, at 19.)

heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, –F.3d–, 2009 WL 2501662, at 7 (3d Cir. Aug. 18, 2009).

In considering whether a complaint or counterclaim fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the pleading and all reasonable inferences that can be drawn from the pleading are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a claim states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. at 1937

(2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950. Thus, following Twombly and Iqbal a well-pleaded complaint or counterclaim must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept

5

all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, –F.3d–, 2009 WL 2501662, at 8.

## IV. **DISCUSSION**

### A. Count I: Declaratory Relief

With respect to the Trustees' first counterclaim seeking entry of declaratory judgment on their own behalf that, inter alia, the policies are enforceable, Principal contends that this claim should be dismissed because it is merely a derivative, mirror image of Principal's claim for declaratory relief. In addition, Principal points out that allowing the Trustees to proceed with a counterclaim seeking precisely the opposite declaratory relief with respect to the insurance policies would create needless confusion for a fact-finder. Plaintiff illustrates this potential problem by noting that it bears the burden of establishing the policies' invalidity by a preponderance of the evidence, and that if it fails to meet this burden the Trustees will prevail. Yet, conversely, if the Trustees are permitted to proceed with their counterclaim for declaratory relief, Principal contends that the Trustees will have the

burden of proving by a preponderance of the evidence that the policies are valid. In short, each party would theoretically bear the burden of proving opposites, and Plaintiff contends this would be both unnecessary and confusing.

Defendants respond that they should be permitted to proceed with their counterclaim regardless of the fact that it derives entirely from Plaintiff's own claim. Relying on what they contend is "clear precedent of the Federal courts in Pennsylvania," Defendants claim a right to seek precisely the opposite declaratory relief to that sought by Plaintiff on the issue of the policies' validity. (Def. Br. at 6.) In support of its assertion, Plaintiff relies on two unpublished decisions in which it appears that plaintiffs and defendants did, in fact, seek precisely the opposite declaratory relief from one another with respect to the validity of insurance policies. See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., No. 3:06-CV-0363, 2007 U.S. Dist. LEXIS 86506 (M.D. Pa. Nov. 26, 2007); Greenway Center, Inc. v. Safeco Ins. Co. of America, No. 3:04-CV-1058, 2005 U.S. Dist. LEXIS 34263 (M.D. Pa. Nov. 30, 2005). Accepting that these cases did involve mirror-image claims for declaratory relief, it is clear that neither of the cited decisions ever addresses whether such counterclaims are appropriate. Indeed, both cases were disposed of on summary judgment and involved a traditional analysis of whether the insurers in each case were obligated to defend or indemnify insureds under the terms of the policies at issue. In

any event, the fact that these cases involved counterclaims similar to the Trustees' in no way causes them to be "clear precedent" that such claims are permissible or proper.

That being said, the Court's own research into the question of whether mirror-image counterclaims should be dismissed because they are entirely derivative of a plaintiff's principal claim reveals that the federal courts, including courts in Pennsylvania, are divided on the issue. Compare Principal Life Ins. Co. v. Minder, No. 08-5899, 2009 U.S. Dist. LEXIS 56568, * 5 (E.D. Pa. July 1, 2009) (dismissing counterclaim upon concluding that there was complete identity of factual and legal issues between parties respective requests for declaratory judgment on insurance policy) with Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1162 ("I know of no rule preventing the assertion of a counterclaim merely because the theory relied upon is the converse of that in the complaint.").[2]

---

[2] A number of federal courts have found the reasoning of Iron Mountain persuasive and have cited it with approval. See, e.g., Stickrath v. Globalstar, Inc., No. 07-1941, 2008 U.S. Dist. LEXIS 95127, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008); Univ. Patents, Inc. v. Kligman, Nos. 89-3525, 90-0422, 1991 U.S. Dist. LEXIS 11917, 1991 WL 165071, at *1 (E.D. Pa. Aug. 23, 1991) Patents, Inc. v. Kligman, Nos. 89-3525, 90-0422, 1991 U.S. Dist. LEXIS 11917, 1991 WL 165071, at *1 (E.D. Pa. Aug. 23, 1991); Blue Cross & Blue Shield of Kan., No. 89-4114, 1990 U.S. Dist. LEXIS 3768, 1990 WL 41403, at *1 (D. Kan. Mar. 23, 1990); see also Kvaerner U.S. Inc. v. Kemper Envt'l Ltd., No. 06-403, 2006 U.S. Dist. LEXIS 78005, 2006 WL 3064104, at *3 (W.D. Pa. Oct. 26, 2006) ("[T]he declaratory judgment [counterclaim] gives the [defendants] the ability to have the

To date, the Third Circuit has not supplied definitive guidance on this issue, but in dicta has suggested that in cases where a counterclaim seeks declaratory relief on the identical legal and factual issues presented in a plaintiff's complaint, dismissal of the counterclaim would be appropriate. <u>Aldens, Inc. v. Packel</u>, 524 F.2d 38, 51-52 (3d Cir. 1975) (citing C. Wright & A. Miller, Federal Practice & Procedure § 1406 (1971)).

The Court has compared the declaratory relief sought by Plaintiff with that sought by Defendants in the counterclaim and it is clear that they present identical legal and factual issues. Indeed, nowhere in either their brief in opposition or their sur-reply do Defendants ever dispute such identity of legal and factual issues.

In accordance with the guidance supplied by <u>Aldens</u> and the cases cited for the proposition that mirror-image counterclaims serve no useful purpose, it is

---

Court rule on these issues if, for example, the plaintiff were to voluntarily dismiss its claim."). In contrast, other courts have found it appropriate to dismiss or strike counterclaims where it is clear that there exists a complete identity of legal and factual issues between the claim and the counterclaim, such that the counterclaim serves no useful purpose. <u>See, e.g.</u>, <u>Berger v. Seyfarth Shaw</u>, LLP, No. 07-5279, 2008 U.S. Dist. LEXIS 93496, 2008 WL 2468478, at *2 (N.D. Cal. June 17, 2008); <u>Stickrath</u>, 2008 U.S. Dist. LEXIS 95127, 2008 WL 2050990, at *4; <u>Pettrey v. Enter. Title Agency, Inc.</u>, No. 05-1504, 2006 U.S. Dist. LEXIS 83957, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006)(citing <u>Aldens, Inc. v. Packel</u>, 524 F.2d 38, 51-52 (3d Cir. 1975)); <u>United States v. Zanfei</u>, 353 F. Supp. 2d 962, 964 (N.D. Ill. 2005); <u>Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.</u>, 362 F. Supp. 78, 82 (N.D. Ill. 1973).

recommended that the Court dismiss the Trustees' counterclaim for declaratory relief set forth in Count I. The Court agrees that not only does the counterclaim, as pleaded, serve no purpose in this case, but its inclusion in the action needlessly creates the risk of procedural confusion.

The Court also finds it appropriate to note that although some courts have expressed concern that dismissing counterclaims could theoretically prejudice a defendant if the plaintiff were later to voluntarily dismiss its complaint, the Court submits that this risk is minimal in this case. Not only has Plaintiff made several representations in its briefs that the validity of the policies at issue will be resolved with the disposition of Plaintiff's claim for declaratory relief, but Rule 41(a) of the Federal Rules of Civil Procedure places substantial limits on a plaintiff's ability to dismiss claims voluntarily following the filing of an answer.[3] The Court is satisfied that the Trustees will not be unfairly prejudiced by the dismissal of a counterclaim for declaratory relief that merely seeks the precise opposite relief as that sought by Plaintiff. Furthermore, if the Plaintiff adopted a course of action which resulted in an unfair prejudice to Defendants as a result of the dismissal of the counterclaim the Court and the parties could revisit this issue.

---

[3]Rule 41(a) provides, in pertinent part, that after an answer has been filed, "an action may be dismissed at the plaintiff's request only by court order, <u>on terms that the court considers proper</u>." Fed. R. Civ. P. 41(a)(2) (emphasis added).

B.    Count II: Bad Faith

Principal next moves to dismiss the Trustee's counterclaim for bad faith on the grounds that the mere filing of a declaratory judgment action is insufficient to give rise to a claim for relief under Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371. Upon consideration of the relevant caselaw, the Court agrees.

Pennsylvania's bad faith statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Con. Stat. Ann. § 8371. In 2007, in a case holding, inter alia, that the bad faith statute did not extend to claims that an insurer engaged in unfair or deceptive practices in the course of soliciting the purchase of a policy, the Pennsylvania Supreme Court explained that the bad faith statute extends to "the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharged its obligations of defense and indemnification in the third-party claim context or its obligation to pay for a loss in the first party claim context." Toy v.

Metro Life Ins. Co., 928 A.2d 186, 199 (Pa. 2007). In other words, the statute reaches "those actions an insurer took when called upon to perform its contractual obligations of defense and indemnification or payment of a loss that failed to satisfy the duty of good faith and fair dealing implied in the parties' insurance contract." Id.[4] Although the Pennsylvania Supreme Court's decision in Toy is somewhat limited, the above language is consistent with the Pennsylvania Superior Court's interpretation of the statute, and comports with the manner in which the Third Circuit predicts the Pennsylvania Supreme Court would interpret the statute's requirements. See, e.g., UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004) ("the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits").

The Pennsylvania Superior Court has long interpreted the bad faith statute to extend to claims alleging that an insurer wrongfully denied benefits under an insurance policy. In Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680 (Pa. Super. Ct. 1994), the Pennsylvania Superior Court discussed the standard for a bad faith action pursuant to § 8371 and held that in order to recover, an insured must

---

[4] See also Ash v. Cont'l Ins. Co., 932 A.2d 877, 882 (Pa. 2007) (an action seeking remedies pursuant to § 8371 "applies only in limited circumstances--i.e., where the insured first has filed 'an action arising under an insurance policy' against his insurer.").

12

show that the insurer: (1) did not have a reasonable basis for denying benefits under the policy, and (2) that the insured knew or recklessly disregarded its lack of reasonable basis in denying the claim. Id. at 688. The Third Circuit subsequently predicted that the Pennsylvania Supreme Court would apply Terletsky's definition of bad faith to § 8371 claims. See Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997 ("The standard for bad faith claims under § 8371 is set forth in [Terletsky]. . . . In our prediction of how the Pennsylvania Supreme Court would measure bad faith claims, we will rely on the actual test that Terletsky applied . . . .").[5]

 In keeping with these decisions, and the limitations applicable to claims brought under Pennsylvania's bad faith statute, district courts in this circuit have routinely disposed of claims of bad faith that do not arise out of the handling or payment of a claim or other benefits. See, e.g., Minder, No. 08-5899, 2009 U.S. Dist. LEXIS

---

[5] The Third Circuit has recognized that the Pennsylvania courts have "extended the concept of 'bad faith' beyond an insured's denial of a claim in several limited areas." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). However, none of the areas identified included the mere act of bringing an action for declaratory relief, and none supports Plaintiff's contention that the conduct alleged on Principal's part is sufficient to make out a claim for bad faith under Pennsylvania law. For example, the Third Circuit noted that the Pennsylvania Superior Court has found: (1) that an insurer's failure to follow internal guidelines could be evidence of bad faith; (2) that an insurer's claims practice manual is relevant evidence in a bad faith claim against the insurer; and (3) that bad faith may extend to conduct of insured during litigation. Id. (citations omitted). Review of each of the cases cited for these propositions, however, shows that all of the decisions involved a claim that had been made and denied.

56568, at * 9 (in a case substantially similar to the instant action, dismissing a claim for bad faith where there had been no claim for benefits under the policy and where the bad faith alleged was predicated on the insurer's filing a declaratory judgment action); Berks Mut. Leasing Corp. v. Travelers Prop. Cas., No. 01-6784, 2002 U.S. Dist. LEXIS 23749, at *18 (E.D. Pa. Dec. 9, 2002) ("Section 8371 is limited to causes of action arising out of the bad faith handling or payment of claims and does not apply to conduct unrelated to the denial of a claim"); Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., No. 98-2365, 1999 U.S. Dist. LEXIS 1802, at *7 (E.D. Pa. Feb. 5, 1999) (bad faith statute limited to bad faith handling or payment of claims or benefits, and does not apply to a dispute over contract terms).

Defendants expend considerable effort arguing that the bad faith statute is not limited to cases involving the alleged wrongful denial of benefits under a policy, but they have failed to persuade the Court that the law in this area has changed in so dramatic a fashion as to extend to the mere act of filing a declaratory judgment action seeking a finding regarding the insurance company's duties under a policy. For example, Defendants urge the Court to read the majority and concurring opinions in Toy so as to find that the law in this area has somehow been expanded. In effect, Defendants do little more than confirm that "there is disagreement among the courts, including among the Justices of Pennsylvania's Supreme Court, concerning the scope

of the [bad faith] Statute." (Def. Sur-Reply at 2.) By way of example, Defendants'

reliance upon a concurring opinion by Justice Eakin to support their position is

unavailing. Justice Eakin's concurring opinion represents just that: a concurring

opinion joined by a minority of the Justices. Justice Eakin did not speak for a

majority of the Pennsylvania Supreme Court when he expressed his view that § 8371

claims are not limited to denial of coverage claims, and he did not speak for the

majority when he offered his interpretation that § 8371 provides a right to relief for

"any act that would injure the insured's rights to receive the benefit of the contract."

Toy, 928 A.2d at 210-11 (Eakin, J., concurring). In contrast, the language of the

majority opinion authored by the late Chief Justice Cappy, quoted above, reflects the

current precedent with respect to the statute and its interpretation. Regardless of

whether there may exist reason to believe that the bad faith statute may be subject to

reinterpretation in the future, Defendants have not shown that the law has, in fact,

been changed to match their own interpretation of the statute's ambit.

Similarly, Defendants' reliance upon Britamco Underwriters, Inc. v. B&D

Milmount Inn, Inc., No. 95-6039, 1996 U.S. Dist. LEXIS (E.D. Pa. April 1, 1996), for

the proposition that the bad faith statute is not limited to actions relating to claims

under a policy is unpersuasive because the case is pointedly inconsistent with the

cases discussed above following the claim-based rule announced in Terletsky.

Similarly, the Court declines to embrace Defendants' suggestion that O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. Ct. 1999) supports their claims that Principal engaged in bad faith. Although the Superior Court in that case did interpret the statute broadly, finding it "was designed to remedy all instances of bad faith conduct by an insurer[,]" the court was addressing claims for bad faith regarding an insurer's investigative practices that took place after a claim had been denied. Id. at 905.[6] Moreover, to the extent the decision is inconsistent with the definition first announced in Terletsky, which the Third Circuit subsequently predicted would be followed by the Pennsylvania Supreme Court, this Court should decline the invitation to follow it.

In closing, it bears mention that there has been no claim for benefits made under the policies at issue in the instant case. Moreover, while Principal has brought a declaratory judgment action to determine its responsibilities under the policy at some time in the future, Principal has clearly pledged to abide by the declaratory

---

[6] It is true that the Superior Court in O'Donnell stated that "it is now clear . . . that section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may also extend to the insurer's investigative practices." Id. at 906. However, regardless of whether O'Donnell reflects an extension of the Superior Court's interpretation of the Pennsylvania bad faith statute, the fact remains that O'Donnell was decided in the context of a case in which a claim for benefits under a policy had been made and denied, with the Court finding that post-litigation conduct may be considered evidence of bad faith under the statute.

16

judgment of the Court and fulfill its contractual duties.  This commitment to perform under a policy once the validity of the policy is determined does not appear to reflect bad faith on Principal's part.  Yet, Defendants have predicated their counterclaim for bad faith entirely upon the fact that Plaintiff has filed an action in this Court seeking a declaration regarding its rights and obligations under the policies.  The Court does not find that such an allegation is sufficient to state a claim for bad faith under §8371, particularly where there has been no claim for benefits under the policy and, therefore, no denial of any claim.  Accordingly, it is recommended that Defendant's counterclaim for bad faith set forth in Count II be dismissed.

C.     Count III: Breach of Contract

In the third count of their counterclaim, the Trustees purport to bring a breach of contract claim. Specifically, the Trustees contend that Principal has breached the insurance policies by "anticipatorily repudiating its obligation to provide benefits." (Doc. 17, ¶ 52.)  In their briefs, the Trustees appears to ground this counterclaim primarily on the fact that Principal has brought this lawsuit.  The Trustees also argue, vaguely, that Principal has done more than merely filed a declaratory action, but has "mounted an assault of the Policies" and has engaged in unspecified conduct against the Delaware Valley Financial Group, Inc., DVFG Advisors, LLC (collectively,

"DVFG") and other DVFG clients.[7]  (Def. Opp. Br. at 9.)  On the basis of these actions, the Trustees contend that Principal has repudiated the policies.

Under Pennsylvania law, a party claiming breach of contract generally must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."  J.F. Walker Co. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).  However, there are cases where the claiming party need not wait until there occurs an actual breach of the contract, but may instead assert a claim based upon a counterparty's anticipatory breach.  However, in order to allege anticipatory breach or anticipatory repudiation of a contract, "there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so."  McClelland v. New Amsterdam Cas. Co., 185 A. 198, 200 (Pa. 1936); see also 2401 Pa. Ave. Corp. v. Fed. of Jewish Agencies of Greater Phila., 489 A.2d 733, 736 (Pa. 1985) (noting that the standard announced in McClelland remains binding law in Pennsylvania).

The Court recommends that the Trustee's counterclaim for breach of contract, or for anticipatory repudiation, be dismissed.  It is undisputed that JoAnn DeRose remains alive and, accordingly, no claim for insurance benefits on her life has been

---

[7] According to the Trustees, they used the services of an investment advisor and agent affiliated with DVFG when procuring the policies at issue in this case.

submitted.  There having been no breach, the Trustees rely upon the doctrine of anticipatory repudiation, but have failed adequately to allege facts sufficient to sustain this theory of relief.  At bottom, it is clear that the Trustees have interpreted the commencement of this declaratory action to be an unequivocal signal that Principal has refused to honor its contractual obligations under any of the policies at issue.[8]  But the fact that Principal has followed lawful process by filing a complaint seeking declaratory relief in federal court is insufficient to state a claim for anticipatory repudiation for the simple reason that by bringing a declaratory action, Principal is seeking a legal declaration regarding its rights and obligations under the policies insuring JoAnn DeRose's life.  See 28 U.S.C. § 2201 (providing that in cases of actual controversy, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ."); see also Allstate Ins. Co. v. Kenney, No. 02-2387, 2003 U.S. Dist. LEXIS 18250, * (E.D. Pa. Oct. 8, 2003) (finding that insurance company's filing of a declaratory judgment action, which sought a declaration of the parties' legal rights and obligations, was not an

---

[8]  The vague charge that Principal has "mounted an assault on the Policies" sheds little light on what actions Principal is alleged to have taken to demonstrate, unequivocally, that the insurer would refuse to perform under the contract. Similarly, the Court finds the fact that Principal may have brought other lawsuits against DVFG or its clients, seeking similar relief to that sought in this action, does not provide the unequivocal showing necessary to maintain a claim for anticipatory repudiation.

announcement that the insurer would refuse to perform under the policies). Indeed, despite Plaintiff's insistence that "[i]n all of its briefing on these disputes . . . Principal has never asserted that, despite its pending suit, if Mrs. DeRose were to die tomorrow, it would pay the claim," (Def. Sur-Reply at 9), Principal has in fact represented that if it does not prevail on its claims for declaratory relief, it "will pay the death benefit upon the death of JoAnn DeRose, assuming all other conditions of coverage are satisfied at the time of the claim." (Pl. Br., at 9.)

Upon review of the counterclaim and their briefs, it is clear that the Trustees have failed to identify sufficient facts evidencing Principal's unequivocal refusal to perform any duty under the contract, and the Court therefore recommends that the Court dismiss Count III of the counterclaim for failure to state a claim for anticipatory repudiation.

### D.    Count IV: Breach of the Duty of Good Faith and Fair Dealing

Finally, Principal moves the Court to dismiss the Trustee's claim that Principal has breached the contractual duty of good faith and fair dealing. As with the Trustee's claims alleging bad faith and anticipatory repudiation, this claim appears to be predicated substantially, if not entirely, upon the fact that Principal has taken lawful steps to obtain declaratory judgment regarding the life insurance policies at issue in this case. Perhaps for this reason, the Trustees offer no substantive argument

in support of this claim that differs in any appreciable respect from its previous arguments, which the Court has already found unavailing.

The Court recommends that the claim for breach of the duty of good faith and fair dealing be dismissed. This claim is based upon conduct which is a right guaranteed to all: the right to commence a lawsuit, a well-established and permissible means by which insurers and insureds can resolve disputes regarding their rights and obligations under insurance policies. Principal has explained its reasons for filing this lawsuit, and the Trustees have identified their disagreements with Principal's position. On the basis of this disagreement, there exists a cognizable case or controversy that this Court may resolve pursuant to 28 U.S.C. § 2201. Nevertheless, the Court does not find that the Trustees have alleged facts to support their extraordinary theory that the institution of a lawful action to declare the parties' rights and obligations constitutes a breach of the duty of good faith and fair dealing imposed under the contract that is the subject of the lawsuit. Moreover, the Trustees have identified no caselaw that would support such a claim on the basis of the facts alleged. For these reasons, it is recommended that the Trustee's counterclaim set forth in Count IV be dismissed.

## V.     RECOMMENDATION

Accordingly, for the reasons set forth above, **IT IS RECOMMENDED**

Principal's motion to dismiss the Trustee's counterclaims in this action (Doc. 21) be

**GRANTED** in its entirety and that Counts I-IV of the Trustee's counterclaim (Doc.

17, at 16-20) filed in this case be **DISMISSED**.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a motion
> or matter described in 28 U.S.C. § 636 (b)(1)(B) or making
> a recommendation for the disposition of a prisoner case or
> a habeas corpus petition within ten (10) days after being
> served with a copy thereof. Such party shall file with the
> clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify
> the portions of the proposed findings, recommendations or
> report to which objection is made and the basis for such
> objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo
> determination of those portions of the report or specified
> proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in
> part, the findings or recommendations made by the
> magistrate judge. The judge, however, need conduct a new
> hearing only in his or her discretion or where required by
> law, and may consider the record developed before the
> magistrate judge, making his or her own determination on
> the basis of that record. The judge may also receive further
> evidence, recall witnesses or recommit the matter to the
> magistrate judge with instructions.

Submitted this 28th day of October 2009.

                              *S/Martin C. Carlson*
                              **United States Magistrate Judge**