**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PRINCIPAL LIFE INSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:08-CV-2294** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARK DeROSE and MATTHEW DeROSE,** | : | |
| **as Trustees of the JoAnn DeRose Family** | : | |
| **Trust, and FIRST PRIORITY BANK,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

At the core of this long-running dispute are three life-insurance policies that plaintiff Principal Life Insurance Company issued on the life of JoAnn DeRose. The complaint, filed in late December 2008, casts the controversy in the framework of the Declaratory Judgment Act, 28 U.S.C. § 2201, and seeks a declaration that the policies are void or voidable because of a lack of insurable interest at inception, a material misrepresentation in the application, or both. (Doc. 1, ¶ 1.) The complaint named only the two trustees of the JoAnn DeRose Family Trust, Mark and Matthew DeRose, as defendants.

In June 2010, First Priority Bank's motion to intervene as of right under Fed. R. Civ. P. 24(a) was granted (Docs. 72, 76, 78, 85, 86 (motion and briefing); Doc. 90 (order granting motion)), and First Priority joined this action as a defendant, filing its answer with affirmative defenses (Doc. 91) on June 29, 2010. First Priority and the DeRose trustees both filed motions for summary judgment in the end of 2010.

(Docs. 104, 114, respectively.) Prompted by averments in Principal Life's response (Doc. 122) to First Priority's statement of material facts (Doc. 107), First Priority filed a motion (Doc. 133) seeking either the joinder of indispensable parties under Fed. R. Civ. P. 19(b) or for dismissal of the action, under Fed. R. Civ. P. 12(b)(1), on the basis of the purportedly indispensable parties' nonjoinder.

Upon referral of First Priority's motion to dismiss or for joinder, Magistrate Judge Carlson issued a Report and Recommendation (R&R) (Doc. 207) recommending denial of the motion. Objections to the R&R and responses to those objections have been filed. (Docs. 209 to 213.) For the reasons set forth below, the court will adopt the R&R's recommendation and dismiss First Priority's motion (Doc. 133).

## I.    Background[1]

### A.    Facts

Setting the stage for this action was the rise of stranger-originated life insurance (STOLI), which essentially turn life-insurance policies into investment vehicles for third parties unrelated and unknown to the person whose life is being insured. A typical STOLI transaction involves the sale of a life-insurance policy to

---

[1] Throughout the course of this litigation, the facts and developing procedural history have been set forth repeatedly. See, e.g., Doc. 178, at 2–13 (R&R on the motions for summary judgment); Doc. 207, at 1–3 (R&R currently under review); Doc. 208, at 2–9 (memorandum and order adopting in part the R&R on the motions for summary judgment). In light of this repetition, the facts will be recited here only as necessary for resolution of the pending objections to the R&R. Regardless of the emphasis on brevity that the foregoing statement implies, explicating the complex nature of the facts involved in this dispute requires a more-than-laconic approach.

an elderly person, in which the seller offers cash up front in exchange for a promise

that the insured will sell the policies to a third party following the lapse of the two-

year contestability period. (Id. at 2 & n.2 (quoting Lincoln Nat. Life. Ins. Co. v.

Calhoun, 569 F. Supp. 2d 882, 885 (D.N.J. 2009).) As STOLI transactions grew in

popularity, insurers like Principal Life grew concerned that many of the policies

that they issued "were not being procured for legitimate needs," instead

functioning as "wager[s] on the lives of strangers." (Doc. 178, at 4; see also Doc. 208,

at 3 (citing Doc. 196, Ex. A).)

On January 30, 2006, Principal Life enacted a policy prohibiting the sale of

any form of STOLI, including one which featured nonrecourse premium financing.

(Doc. 208, at 2 (citing Doc. 196, Ex. A, at 7).) It also amended its application process,

requiring applicants and their brokers to fill out a Policy Owner Intent ("POI") form

that asked three questions:

1.  Is there an intention that any group of investors will obtain any
    right, title, or interest in any policy issued on the life of the
    Proposed Insured(s) as a result of the policy applied for? If yes,
    explain.

2.  Will you borrow money to pay the premiums for this policy or have
    someone else pay these premiums for you in return for an
    assignment of the policy values back to them? If yes, explain . . . .

3.  Have you transferred or assigned any right, title, or interest in any
    life insurance or annuity contract other than absolute assignment
    for Internal Revenue Code 1035 exchange? If yes, explain.

(Doc. 208, at 3–4 (citing Doc. 196, Ex. A, at 6).)

On December 5, 2006, JoAnn DeRose applied for a $25 million life-insurance

policy with Principal Life. (Id. at 4 (citing Doc. 196, Ex. B).) The application listed

the JoAnn DeRose Family Trust as the intended owner and beneficiary of the

policy. (Id.) Ronald Perry, an independent broker authorized to sell Principal Life

policies, was listed as the broker representative. (Id.)[2] After Ms. DeRose and Perry

submitted a POI form,[3] the application was reviewed and accepted;[4] Principal Life

issued three insurance policies on Ms. DeRose's life that together provided $25

million in coverage and became effective on February 15, 2007. (Doc. 208, at 5–6.)

Ms. DeRose and the trustees (collectively, the DeRoses) engaged Delaware

Valley to help them obtain financing for the policies. (Id. at 6.) Among the Delaware

Valley employees that assisted the DeRoses were Marc Smith and Tom Schirmer.[5, 6]

---

[2] Perry was affiliated with Delaware Valley Financial Group, a business center that marketed and sold financial products on Principal Life's behalf. (Doc. 208, at 4.) All Delaware Valley brokers were subject to broker agreements with Principal Life, which required them to "conform to and comply with all of [Principal's] policies and procedures." (Id. at 4–5 (quoting Doc. 196, Ex. D, at 2) (alteration in original).) The agreements also prohibited brokers from "[accepting] risks of any kind," determining insurability, binding Principal Life "in any way," or "waiv[ing] any provision of any policy." (Id. at 5 (quoting Doc. 160, Ex. D, at 3).)

[3] For more detail on the POI form that Ms. DeRose and Perry submitted, see Doc. 208, at 5 (citing Doc. 196, Exs. B, G).

[4] For more detail on the review and acceptance process, see Doc. 208, at 5–6 (citing Doc. 196, Ex. I, at 6–7, 71–77, 91–99, 117, 130, 137, 147–48, 159; Doc. 196, Exhs. M, N, O).

[5] Smith and Schirmer served both as co-managing directors and independent brokers for Principal. As directors, they were involved with internal administrative functions and strategic planning; as independent brokers, they were insurance salesmen. Doc. 208, at 6 n.7 (citing Doc. 182, Ex. F ¶ 26; Doc. 201, Ex. D).

[6] Smith, Schirmer, and Perry all knew that the Trust intended to obtain premium financing. Doc. 208, at 6–7, 7 n.8 (citing Doc. 182, Ex. J, at 72–80; Doc. 196, Ex. P; Doc. 182, Ex. G, at 128–29).

(Id. at 6 (citing Doc. 182, Ex. J, at 63–71; Doc. 182, Ex. L, at 49, 91, 110–18, 123–2).)
With Smith and Schirmer's aid, the Trust obtained a $1,515,000 loan from First
Priority Bank, a sum intended to cover twenty-seven months' worth of premiums
on the policies and of interest payable to First Priority, as well as a loan-
commitment fee payable to First Priority. (Id. at 7 (citing Doc. 196, Ex. U).) Only the
policies secured the loan. (Id.) Before executing this loan agreement, First Priority
spoke to none of the DeRoses, required no collateral or personal guarantee from
Ms. DeRose, and conducted no underwriting to determine whether the Trust could
repay the loan. (Id. (citing Doc. 196, Ex. T, at 30, 36, 61–62, 173; Ex. U, at 7; Ex. Y, at
17–18; Ex. Z, at 29).) First Priority's Credit Approval Memorandum for the DeRose
loan stated that the principal source of repayment was to be "the sale of the three
assigned life insurance policies in the secondary market, via a life settlement
transaction." (Id. (citing Doc. 196, Ex. W, at 8).) The memorandum also stated that
the Corporate Planning Group (CPG) would market and sell the policies in the
secondary market. (Id. at 7–8 (citing Doc. 196, Ex. W, at 6).) CPG guaranteed that it
would repay the loan to First Priority if the policies could not be resold. (Id. (citing
Doc. 196, Ex. AA).)

On February 23, 2007, the DeRose trustees executed forms of Assignment of
Life Insurance on each of the policies. (Id. (citing Doc. 201, Ex. A).) Principal Life
acknowledged these assignments at the end of the following month. (Id.)

More than three years later—and more than a year after the commencement
of the instant action—on February 25, 2010, First Priority declared the trustees to

be in default. (<u>Id.</u> at 9 n.10 (citing Doc. 184, Ex. C).) First Priority "determined that

its security interest in the policies was in jeopardy," and elected to continue making

all premium payments necessary to keep the policies in effect. (<u>Id.</u>; Doc. 207, at 2.)

### B.   <u>Procedural History</u>

Principal Life Insurance Company initiated the instant action by filing a

complaint on December 23, 2008, naming as defendants Mark and Matthew

DeRose in their capacties as trustees for the JoAnn DeRose Family Trust. (Doc. 1.)

The DeRoses filed an answer with counterclaims and affirmatives defenses on April

20, 2009. (Doc. 17.) In early May 2009, Principal Life moved to dismiss the DeRoses'

counterclaims (Doc. 21), and after the motion was fully briefed and the case referred

(Doc. 32) to Magistrate Judge Carlson for pretrial management, the Magistrate

issued an R&R (Doc. 37) on October 28, 2009 recommending that Principal Life's

motion be granted. The court adopted the R&R on November 23. (Doc. 44.)

On May 17, 2010, First Priority Bank moved to intervene as a defendant per

Fed. R. Civ. P. 24(a), which allows intervention as of right when a nonparty "claims

an interest relating to the property or transaction that is the subject of the action,

and is so situated that disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest, unless the existing parties

adequately represent that interest." (Doc. 72, ¶ 3 (quoting Fed. R. Civ. P. 24(a).) The

related and otherwise-unrepresented interest that First Priority asserted was its

first-lien security interest in the three policies at issue, which was intended to

secure the roughly $1.5 million loan that First Priority had made to the trust. (<u>Id.</u>

¶¶ 4–8.) Over opposition from both parties to the action, Magistrate Judge Carlson granted First Priority's motion to intervene on June 29, 2010. (Doc. 90.) First Priority filed its answer to Principal Life's complaint that same day. (Doc. 91.)

First Priority filed a motion for summary judgment on December 10, 2010, seeking entry of an order that the life-insurance policies that Principal Life issued on the life of JoAnn DeRose were valid and enforceable. (Doc. 104.) Three weeks later, the DeRoses filed their own motion for summary judgment, also seeking to have the three life-insurance policies held valid and enforceable. (Doc. 114.) Both motions were properly supported with briefs and statements of material facts.

Principal Life responded separately to the two motions. Principal Life's response to First Priority's statement of material facts[7] (Doc. 122), filed January 18, 2011, included averments that certain of Principal Life's agents, including Ronald Perry and other brokers at Delaware Valley involved in the issuance of the three policies, were acting beyond the scope of their authority as agents when they issued the policies. (E.g., Doc. 122, ¶¶ 3–8.) Prompted by these averments that Principal Life's agents were acting ultra vires, First Priority filed a motion on February 18, 2011, seeking either that Principal Life be required to join "Delaware Valley Financial Group, Inc. . . ., Mr. Ronald Perry, Total Financial Services, LLC . . . , Thomas Schirmer, Marc Smith and/or any additional parties receiving commissions or fees pursuant to the issuance of the DeRose Policies" (collectively, the "Agents")

---

[7] First Priority's statement of material facts was filed December 10, 2010. (Doc. 107.)

as indispensable parties under Fed. R. Civ. P. 19(b) or for dismissal of the action,

under Fed. R. Civ. P. 12(b)(1), on the basis of the Agents' nonjoinder. (Doc. 133.)

While resolution of First Priority's motion to dismiss or for joinder of

indispensable parties remained pending, Magistrate Judge Carlson issued an R&R

(Doc. 178) on July 15, 2011, recommending that both motions for summary

judgment (Docs. 104, 114) be denied. Objections and responses thereto were filed.

On October 5, 2011, the court issued a memorandum and order on the R&R,

adopting it in part and rejecting it in part. (Doc. 208.) Specifically, the court adopted

the R&R (thereby denying the motions for summary judgment) on two issues:

1. Whether Principal Life could seek to have the policies declared
void or voidable for material misrepresentations made on the
application for the policies.

2. Whether Principal Life is entitled to retain premiums paid to it
as an offset to the costs and expenses of issuing the policies.

(Id. at 32–33.) The R&R was rejected in all other respects. (Id. at 33.) In the same

order, the court granted the motions for summary judgment on the issue of whether

Principal Life could seek to have the policies declared void or voidable for lack of an

insurable interest at the policies' inception, but denied the motions in all other

respects. (Id.)

Two days before the court issued its order (Doc. 208) on the R&R (Doc. 178)

concerning the motions for summary judgment (Docs. 104, 114), Magistrate Judge

Carlson filed an R&R (Doc. 207) on First Priority's motion to dismiss or for joinder

(Doc. 133). In a footnote, the R&R described First Priority's motion as untimely and

8

thus procedurally defective (Doc. 207, at 5 n.2), but the magistrate nonetheless proceeded to address the motion on its merits. Stated briefly, the R&R conducted an analysis under Fed. R. Civ. P. 19(a), determined that the Agents were not necessary parties to the litigation because complete relief could be afforded to the present parties without the Agents' joinder, and recommended denial of First Priority's motion. Timely objections, responses thereto, and related briefing followed (Docs. 209 to 213), and the matter is now ripe for disposition.

## II.   <u>Standard of Review for a Magistrate Judge's Report and Recommendation</u>

Parties' objections to a magistrate judge's report and recommendation impel the court to perform a de novo review of the contested portions of the report. <u>Sample v. Diecks</u>, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c)). Federal and local rules require such a review of a report and recommendation only when a party files "written objections [that] specifically identify the portions" of the findings or recommendations "to which objection is made and the basis for such objections." L.R. 72.3; <u>see</u> Fed. R. Civ. P. 72 (b)(3). When the parties have registered either no objections or only "general" objections, "the district court need only review the record for plain error or manifest injustice." <u>Cruz v. Chater</u>, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (citing <u>Garcia v. I.N.S.</u>, 733 F. Supp. 1544, 1555 (M.D. Pa. 1990)).

III.  **Discussion**

A.    **The agents that First Priority seeks to have joined**

First Priority specifically named five nonparties (plus the catch-all "any additional parties receiving commissions") that it seeks to have joined to this action:

1.  **Delaware Valley Financial Group, Inc.**, a business located in Pennsylvania that, although independently owned, was controlled by Principal Life, which employed all the individuals working there. (Doc. 208, at 4 n.6 (independently owned); Doc. 210. at 2–3 (citing John E. John[8] Dep. 102, Feb. 16, 2011, Doc. 140, at 5) (controlled by Principal Life).)

2.  **Thomas Schirmer**, an employee of Principal Life and a managing director of Delaware Valley, who, based on record evidence, resides in King of Prussia, Pennsylvania. (Doc. 210, at 3 (employed by Principal Life); Doc. 182, at 4 (managing director at Delaware Valley); Doc. 130, at 7 (resident of King of Prussia as of 2002).)

3.  **Marc Smith**, also an employee of Principal Life, a managing director of Delaware Valley, and a resident of King of Prussia. (Doc. 210, at 3; Doc. 182, at 4; Doc. 130, at 12.)

4.  **Ronald Perry**, to whom Principal Life paid fees and commissions through a limited-liability company; who was legal counsel to the Trust; whose law office was in York, Pennsylvania; and who was a co-owner of Total Financial Solutions. (Doc. 182, at 5 (paid by Principal through an LLC); id. at 9 (legal counsel to the Trust); Perry Dep. 19:13–21:7, Dec. 7, 2009, Doc. 123-1, at 22 (location of law office; co-owner of Total Financial).)

5.  **Total Financial Solutions, LLC**, a Philadelphia-based company co-owned by Perry, which received commissions or fees pursuant to the issuance of the DeRose Policies. (Perry Dep. 21:2–7, Doc. 123-1, at 24 (based in Philadelphia); Doc. 133, at 1 (received commissions).)

All five of these persons and entities are residents of or have a principal place of business in Pennsylvania.

---

[8] John E. John, an employee of Principal Life, is Principal Life's Rule 30(b)(6) designee.

As for the present parties to this action, First Priority Bank is a Pennsylvania state-chartered bank with its principal offices in Malvern, Pennsylvania. (Doc. 72-2, at 3.) The JoAnn DeRose Family Trust was created in and is governed by the laws of Pennsylvania. (Doc. 1, at ¶¶ 3–4.) Principal Life Insurance Company is an Iowa corporation with a principal place of business in Iowa. (Doc. 1, ¶ 1.)

### B.   Timeliness of First Priority's motion

The magistrate judge made only passing reference to the matter of timeliness, stating that "First Priority's motion is procedurally deficient" because it was filed eight months after its responsive pleading, but he "decline[d] to address this [matter] in detail," preferring to base his recommendation for dismissal of the motion on substantive grounds. (Doc. 207, at 5 n.2.) In characterizing the motion as procedurally deficient, the magistrate judge construed First Priority's motion as under FED. R. CIV. P. 12(b)(7) for failure to join a party under Rule 19. Under such a construction, First Priority's motion is unquestionably untimely, as a Rule 12(b)(7) motion must "be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). However, First Priority identified two bases for its motion: first, Rule 12(b)(1), which challenges a court's subject-matter jurisdiction, and second, failure to join indispensable parties under Rule 19(b). (Doc. 133, at 1.) A fundamental principle of federal-court jurisdiction is that its power to adjudicate the subject matter of the dispute may be called into question at any point, including on appeal or sua sponte by the court. See FED. R. CIV. P. 12(h)(3). The absence of indispensable parties from an action raises concerns analogous to jurisdictional

11

questions; the Federal Rules accordingly preserve a party's right to raise a Rule 19(b) defense as late in litigation as the trial itself. FED. R. CIV. P. 12(h)(2).

Despite the R&R's scant treatment of the timeliness question, the parties have put forth substantial arguments on both sides of the matter, indicating that timeliness merits due consideration here. However, as Magistrate Judge Carlson implicitly recognized in his brief discussion of timeliness, First Priority's argument suffers from a fundamental flaw: no matter how strong a case First Priority can muster that joinder of the Agents is necessary to afford complete relief among the present parties or to avoid any of the other concerns of Rule 19(a), the analysis will never proceed to Rule 19(b), which addresses "indispensable" parties, because the joinder of the Agents would not deprive the court of subject-matter jurisdiction. A Rule 19 analysis only proceeds to subpart (b) if joinder of the parties would not be feasible, but here, it would, since joining the Agents as defendants would maintain complete diversity: the plaintiff is a citizen of Iowa, and all defendants or would-be defendants are citizens of Pennsylvania. Rule 19(b), by its very terms, does not apply to the circumstances presented in this case; Rule 12(h)(2) does not preserve a party's right to raise a defense based on Rule 19(a); and nothing presented in First Priority's motion or related submissions raises questions of subject-matter jurisdiction. The simple fact that joinder of the Agents would not deprive the court of subject-matter jurisdiction means that the Agents could not, by definition, be found to be indispensable parties. Nonetheless, the court will entertain First

Priority's arguments concerning timeliness, as they appear to be nonfrivolous, good-faith legal contentions that are not being presented for any improper purpose.

First Priority insists that its motion was timely because it could not have filed its motion to dismiss or for joinder any earlier. Principal Life's response to First Priority's statement of facts (Doc. 122), filed on January 18, 2011, contended for the first time that its agents had acted ultra vires in issuing the three life-insurance policies at the core of this case. It was only after learning of these contentions, taken in combination with the Agents' "receipt and possession of the monies that [Principal Life] seeks as damages" (Doc. 213, at 12), that First Priority had any reason to believe that the Agents might need to be joined to the action.[9] The motion, First Priority concludes, was therefore timely, since it had previously lacked the knowledge that would have impelled the filing of such a motion at any earlier time. (See generally Doc. 213, at 10–12 (setting forth First Priority's timeliness argument).)

First Priority is, of course, correct that a motion to join an indispensable party under Rule 19(b) can be filed at any time, even at trial, and that questions of subject-matter jurisdiction can likewise be raised at any point. However, these premises do not imply the conclusion that First Priority reaches, as First Priority simply assumes that the Agents are indispensable parties (rather than merely

---

[9] First Priority also served Principal Life with requests for admissions regarding Schirmer and Delaware Valley, to which Principal Life responded with similar claims that the brokers at Delaware Valley were acting outside of their roles as Principal Life's agents when they issued the life-insurance policies on Ms. DeRose's life. (Doc. 213-5, at 4–5.) First Priority received the answers to its requests for admissions on February 14, 2011. (Id. at 8–9.)

necessary parties). Proceeding, as it does, on this assumption, First Priority's argument effectively seeks the creation of a per se rule that a party's blameless ignorance of facts that would support a Rule 19 motion—whether under subdivision (a) or (b)—preserves the right to file such a motion until such time as that party gains knowledge of the relevant facts. First Priority cites three extrajurisdictional cases in support of its position, but none of them compel the conclusion that First Priority wishes the court to reach.

The first case that First Priority cites stands for the proposition that a plaintiff cannot use Rule 19 offensively "to negate an adverse ruling because of [the plaintiff's] own failure to join all indispensable parties." Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 434 (5th Cir. 1992). In Judwin, the defendant's answer to the first amended complaint raised the issue of the plaintiff's failure to join indispensable parties. Id. Despite being put on notice—at the pleading stage of litigation—that "other parties might be necessary for a just adjudication," the plaintiff opted not to amend its complaint to include other defendants or involuntary plaintiffs, instead choosing to wait until after oral argument on appeal to the Fifth Circuit to raise the indispensability issue. Id. Judwin provides no support for First Priority's position; it holds only that a plaintiff cannot knowingly delay the joinder of indispensable parties until after trial. It does not hold that a defendant's right to seek joinder of necessary parties is preserved if the defendant lacks knowledge of these parties' necessity.

14

First Priority's second-cited case is similarly unavailing. <u>Agrashell, Inc. v. Composition Materials Co.</u>, 40 F.R.D. 395 (S.D.N.Y. 1966), merely repeats the uncontroversial, well-established proposition that, pursuant to Rule 12(h), a party may file a Rule 19(b) motion after the filing of responsive pleadings. <u>Id.</u> at 397 (quoting <u>Sweetwater Rug Corp. v. J & C Bedspread Co. Inc.</u>, 198 F.Supp. 941, 943 (S.D.N.Y. 1961)). The case makes no mention of necessary parties or Rule 19(a).

The third and final case that First Priority cites, <u>Benger Labs, Ltd. v. R.K. Laros Co.</u>, 24 F.R.D. 450 (E.D. Pa. 1959), provides limited support for First Priority's argument, albeit in a tangential way. Rather than create a rule preserving an ignorant party's right to file a Rule 19(a) motion after the filing of responsive pleadings, <u>Benger</u> implies that a party possessing knowledge that other nonparties might be indispensable to the action may have a duty to seek their joinder:

> FED. R. CIV. P. 12(h) cannot be interpreted to mean that a party with the necessary information to make a motion for joinder of an indispensable party at his disposal can sit back and raise it at any point in the proceedings, when the only effect of the motion under the circumstances would be to protect himself and not the person alleged to be indispensable. Such an interpretation would violate the direction of FED. R. CIV. P. 1 that the rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.'

<u>Id.</u> at 452. <u>Benger</u> thus lends equitable support to First Priority's position; it could be read to suggest that Principal Life should have sought the joinder of its "rogue" agents once First Priority had joined the action; it could even be read to provide support for a motion for sanctions against a party in Principal Life's position. But no such motion for sanctions is before the court, nor is there any established

doctrine imposing a duty upon parties in Principal Life's position to seek joinder of necessary or indispensable parties; the motion sub judice is First Priority's, filed eight months after its responsive pleadings, based on the putative indispensability of the Agents under Rule 19(b) and the purportedly attendant need to dismiss Principal Life's claims. But <u>Benger</u> does not compel this result, as the Agents are not indispensable, there is no case law that permits a party to file a motion for joinder of necessary parties under Rule 19(a) eight months after the filing of responsive pleadings, and First Priority's motion is, as the magistrate judge concluded, untimely and procedurally defective.

      C.      <u>**Substantive issues discussed in the R&R and objections thereto**</u>

The magistrate judge provided a thorough and methodical analysis of whether the Agents were necessary parties under Rule 19(a), ultimately concluding that the Agents were not necessary. The court takes no position on either the cogency of the magistrate's analysis or the parties' objections, as the preceding discussion, establishing that First Priority's motion was untimely, is dispositive. Since the untimeliness of the motion requires that it be denied, any discussion of the motion on its merits would be mere dicta.

**IV.**    **Conclusion**

The court will adopt the magistrate judge's recommendation to deny First

Priority Bank's motion to dismiss or for joinder of indispensable parties, although

the magistrate's reasoning for dismissal is rejected. The fatal procedural defect in

the motion was dispositive and rendered any further discussion unnecessary. An

appropriate order will issue.


　S/ Christopher C. Conner　　
CHRISTOPHER C. CONNER
United States District Judge


Dated:　　　May 10, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PRINCIPAL LIFE INSURANCE COMPANY,** | : | **CIVIL ACTION NO. 1:08-CV-2294** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MARK DeROSE and MATTHEW DeROSE,** | : | |
| **as Trustees of the JoAnn DeRose Family** | : | |
| **Trust, and FIRST PRIORITY BANK,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 10th day of May, 2012, upon consideration of the report of

the magistrate judge (Doc. 207), wherein the magistrate judge recommends denying

the motions to dismiss or for joinder of indispensable parties (Docs. 133) filed by

defendant First Priority Bank, and upon further consideration of the parties'

objections thereto (Docs. 209 to 213), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The report of the magistrate judge (Doc. 207) is ADOPTED in part as
    set forth in the accompanying memorandum.

2.  First Priority's motion to dismiss or for joinder of indispensable parties
    (Doc. 133) is DENIED.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge